## Case No. 5,573.

### GOODYEAR et al. v. HULLIHEN.
### SAME v. WINGERTER.
### SAME v. LUNSFORD.

[2 Hughes, 492; 3 Fish. Pat. Cas. 251.] [1]

District Court, D. West Virginia. Aug., 1867.

EQUITY JURISDICTION—REMEDY AT LAW—ACT OF JULY 4, 1836—PATENTS—SUIT BY FOREIGN ADMINISTRATOR—INVENTION OF INTESTATE—NOTARIES—ASSIGNEE—EXTENDED TERM—SUIT AT LAW.

1. Section 17 of the act of July 4, 1836 [5 Stat. 124], provides that all actions, etc., un-

[1] [Reported by Hon. Robert W. Hughes, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and statement are from 3 Fish. Pat. Cas. 251, and the opinion is from 2 Hughes, 492.]

der the patent laws, shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States. There is, therefore, nothing in the objection to the jurisdiction of the court in equity, that the complainant could obtain redress at law.

[Cited in Blake Crusher Co. v. Ward, Case No. 1,505.]

2. The reasons which exist for requiring an administrator, in ordinary cases, to qualify in the state in which he sues, do not apply to suits brought by an administrator to whom a patent has been granted for the invention of his intestate, for the infringement thereof.

3. In such cases the administrator is a trustee holding the legal title, and the patent is not assets in his hands belonging to the personal estate of the intestate, but is a franchise granted to the administrator for the benefit of the heirs at law, or devisees of the deceased inventor.

[Cited in Wilson v. Tootle, 55 Fed. 216.]

4. Where a notary public, in signing a jurat, appended to his name the words "notary public," and affixed a seal bearing his name and the words "notary public:" *Held*: That was sufficient compliance with the act of September 16, 1850 [9 Stat. 458].

5. The fact that a person was an assignee under the original term of letters patent furnishes no presumption that he is interested in the extended term.

6. An inventor may bring an action at law, or, if he prefer to do so, he may in the first instance seek redress in equity without having established his right at law.

In equity. These were motions, on the part of complainants [Henry B. Goodyear, administrator of Nelson Goodyear, deceased, and Samuel A. Duncan] for provisional injunctions, to restrain the defendants [M. F. Hullihen, Charles Wingerter, and Thomas Lunsford] from infringing reissued letters patent Nos. 556 and 557, granted to Henry B. Goodyear, administrator of Nelson Goodyear, deceased, May 6, 1851, and more particularly referred to in the report of the case of Goodyear v. Honsinger [Case No. 5,572]; and on the part of the defendants, for postponement, and for further time for answer. The defendants were charged with infringing the patents by using hard rubber for dental purposes, and the facts were substantially the same as those in like cases heretofore reported.

B. Stanton and W. Bakewell, for complainants.

G. H. Lee, M. P. Amiss, J. S. Wheat, and D. Peck, for defendants.

JACKSON, District Judge. These cases came before me, at chambers, on a motion by complainants for a preliminary injunction to restrain the defendants, who are dentists in the city of Wheeling, from the use of hard rubber, or vulcanite, for the purposes of dentistry. The complainants base their claim for injunction on certain reissued letters patent, Nos. 556 and 557, granted to Henry B. Goodyear, administrator of Nelson Goodyear, deceased, on the 18th May, 1858, being reissues of original letters patent [No. 8,075], granted 6th May, 1851, to Nelson Goodyear,

for improvement in the manufacture of India-rubber. They set forth in their bill of complaint that Samuel A. Duncan, one of the complainants, is the exclusive owner of the right to use hard rubber for dental purposes, and to practice such invention as applied to dentistry under said reissued patents; that suits have been brought in other circuits, on said letters patent, and that the validity thereof has been fully vindicated and sustained, and that each of the defendants in the three several bills filed has infringed said said letters patent, and refuses to make compensation therefor to the owners of the right thus invaded. It appears from the statements of these bills, and it is otherwise known to the court, that several suits have been brought for infringement of these reissued patents, Nos. 556 and 557, and that said patents have been thereby sustained and their validity and sufficiency fully established. This question I may then consider as settled, and regard the validity of these patents as beyond all question.

At the hearing of the motion just argued several objections were made by the defendants' counsel, as well for the purpose of showing that the complainants are not entitled to a preliminary injunction as also for obtaining further time in which to answer the bills filed. The first of these objections is, that the complainants could obtain all the redress they are entitled to by action at law for infringement of their patents, and are not therefore entitled to the interposition of a court of equity. The fact to which I have adverted, that these patents passed under the judicial scrutiny of more than one of the justices of the supreme court sitting in circuit, and of other circuit courts of the United States, and have been sustained, takes away all possible reason which might exist for requiring that the complainants should first establish their right at law; besides, the 17th section of the act of congress of 4th July, 1836 [5 Stat. 124], settles this question, by enacting that "all actions, suits, controversies, and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries, shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States, or any district court having the power and jurisdiction of a circuit court; which courts shall have power, upon a bill in equity filed by any party aggrieved, in any such case, to grant injunctions according to the course and principles of courts of equity, to prevent the violations of the rights of any inventor as secured to him by any law of the United States, on such terms and conditions as said courts may deem reasonable." There is nothing, therefore, in this objection.

The next point made by the defendants' counsel is that Henry B. Goodyear has offered no proof that he is the administrator of Nelson Goodyear, deceased, and that, even if that fact is to be taken as sufficiently proven, for the purposes of the pending motion, by the allegations of the bill, it is necessary that the administrator should take out letters of administration in this state in order to entitle him to sustain a suit here as such administrator.

It does not appear to me that this point is well taken; the reasons which exist for requiring an administrator, in ordinary cases, to qualify in the state in which he sues, do not apply to suits brought by an administrator to whom a patent has been granted for the invention of his intestate, for infringement of the rights thus granted. Under the act of congress patents are granted, in case of the decease of the inventor, to the executor or administrator of such person, in trust for the heirs-at-law of the deceased, in case he shall have died intestate, but if otherwise, then in trust for his devisees (Act July 4, 1836, § 10), and reissues are also granted to the executor or administrator (Act July 4, 1836, § 13). In such cases the administrator is a trustee holding the legal title, the patent is not assets in his hands belonging to the personal estate of the intestate, but is a franchise granted to the administrator for the benefit of the heirs-at-law or devisees of the deceased inventor. There is therefore no reason for requiring him to qualify in this state; besides which, the question may be considered as set at rest by the authority of the following cases, cited in argument by complainants' counsel: "It is not necessary in an action by an administrator that he should produce his letters of administration. The patent being renewed to him as administrator is proof that he had satisfied the officer authorized to grant a renewal, of his being administrator, and it is not competent for the court to go behind this decision." Woodworth v. Hall [Case No. 18,016]. "An administrator of a patentee residing in one state may commence an action in the United States circuit court of another state for the recovery of damages for an infringement of a patent, without taking out letters of administration in the latter state." Smith v. Mercer [Id. 13,078].

It is further objected, that the bills filed by complainants are not sworn to, or rather that the affidavits annexed to the bills are not properly certified by the notary public by whom the oath in each case was administered. The affidavits have the following caption:

"United States of America, District of Massachusetts, County of Suffolk—ss."

The certificate of the notary and the seal attached are as follows:

"Sworn to before me this 21st day of November, A. D., 1866.

"N. Austin Parks,
"Notary Public,
"Suffolk Co., Mass.

　　　　N. Austin Parks,
　　　　Notary Public."

It is claimed that the officer should state in

his certificate that he is a notary public, and that such certificate is given under his notarial seal. Under the Code of Virginia, which is also the law of this state, this objection might probably be well taken, but with this question we have here no concern, as the sufficiency of the certificate rests on the provisions of the act of congress and not on the law of the state.

The act of congress of 16th of September, 1850, § 1 [supra], provides that "in all cases in which, under the laws of the United States, oaths or affirmations or acknowledgments may now be taken or made before any justice or justices of the peace of any state or territory, such oaths, affirmations, or acknowledgments may be hereafter also taken or made by or before any notary public duly appointed in any state or territory, and when certified under the hand and official seal of such notary, shall have the same force and effect as if taken or made by or before such justice or justices of the peace." The certificate in this case is signed by N. Austin Parks, who appends to his name the words "notary public;" there is therefore no doubt as to the capacity in which he acted. There is a seal affixed, and this seal bearing the name of the officer who signs the certificate, it is clearly his seal. It also has on it the words "notary public," and therefore sufficiently sets forth his official character. Whether an ordinary notarial seal, not bearing the officer's name, would have sufficed, it is not necessary here to decide, as the seal affixed to these bills relieves the question of any doubt as to the person whose seal it is, and his official character. I am, therefore, clearly of opinion that the certificate is sufficient. It is somewhat remarkable that this objection, if well taken, has not been raised in any of the cases of litigation under these patents, in which the bills and certificates to the affidavits have been precisely like these now under consideration. The suit recently brought before Justice Nelson in New York was managed for the defence by some of the ablest counsel in the United States, and it can hardly be supposed that this objection, if there were anything in it, would not have been made, especially as the chief object of the defendant in that case, as in all the others, seems to have been to interpose every objection that would delay the hearing. This general acquiescence of the bar furnishes a strong presumption that the form of affidavit and the certificate have been deemed sufficient.

The last objection to the sufficiency of the bills is, that they set forth that a Mr. Poppenhusen has acquired by assignment or otherwise an interest in these patents, giving him a joint interest in the subject-matter of the suit, and that it is therefore necessary to make him a party thereto. The bills recite the grant of letters patent to Nelson Goodyear on 6th of May, 1851, the surrender of the original patent and reissue thereof on 18th of May, 1858, in two patents, and that Poppenhusen became interested in such reissued patents. But the original term of the patent and reissue thereof expired on 6th of May, 1865, and with the expiration of the first term the interest of all parties holding under the patentee by license or assignment terminated, so that Poppenhusen ceased to be interested in these patents on 6th of May, 1865, before the filing of these bills, and it is not alleged in the bill, and cannot be presumed without such allegation or other proof, that he has any interest in the extended term under which the present complainants claim. The bills being filed by Henry B. Goodyear, administrator, to whom these patents were extended, and Samuel A. Duncan, claiming as sole grantee of the right to use the invention for the purposes of dentistry, the proper parties are made complainants, and this objection falls to the ground.

This disposes of all the formal objections made to the bills filed by complainants, and it remains to consider the reasons set forth by all these defendants in their affidavits filed, for urging a postponement of the hearing and obtaining further time to answer the bills. The defendants allege that they are not prepared, because they cannot procure counsel to prepare their answers, that the practice in patent cases is a specialty in the profession, and that no attorneys in this part of the district have given the requisite attention to that branch of the law to qualify them for preparing a suitable defence or answer. Notice of the motion for preliminary injunction was served on these defendants early in July last. They appeared by counsel in the United States district court held at Wheeling on the day fixed for hearing, and successfully resisted the application for that term, and the hearing was postponed until this time, of which postponement they were fully advised, and to which they assented. They have again appeared by counsel, who have ably argued the pending motions, so that I am not able to perceive any want of capacity on their part to apprehend the questions involved. Under all these circumstances the absence of other counsel, whose attendance they desired but were unable to procure, can furnish no ground for further delay. These defendants have had a full month in which to prepare their defence and procure counsel, and no further time can reasonably be asked. For these reasons, the motion made on the part of the defendants for further time in which to file their answers is overruled.

This brings me to the consideration of the main question before me, whether, upon the bills of complaint and accompanying affidavits, the complainants are entitled to the preliminary injunctions as prayed for. The bills set forth that Nelson Goodyear was the original and first inventor or discoverer of a new and useful improvement in India-rubber, known as hard rubber or vulcanite, for

which letters patent of the United States were issued to him on 6th May, 1851, for the term of fourteen years; that Nelson Goodyear died on 10th July, 1852, and his brother, Henry B. Goodyear, was appointed his administrator on 20th September, 1852. It appears that his original patent was inoperative and insufficient to afford full security to the invention, by reason of covering two separate and distinct inventions, and because it did not protect against the importation of articles of hard rubber from foreign countries, unless it could be proved by what process they were manufactured, which could not be done. To overcome this difficulty, the commissioner of patents, on surrender of the original patent, and a careful re-examination, as required in such cases, granted a reissue by two patents (reissue Nos. 556 and 557), dated 18th May, 1858, for the residue of the original term of fourteen years, from 6th May, 1851, which were issued to Henry B. Goodyear, administrator of Nelson Goodyear, deceased, one covering the process of making the hard rubber, and the other the product of the hard rubber, as an article of manufacture previously unknown. It is alleged, and is in evidence, that these two reissued patents, Nos. 556 and 557, were on the 5th May, 1865, renewed and extended by the commissioner of patents for the term of seven years from the 6th May, 1865. It is further alleged in these bills, that the complainant, Duncan, obtained on 17th July, 1866, the sole and exclusive right and license under said extended patents to manufacture, use, and sell, and to grant to others the right to manufacture, use, and sell, hard rubber for dental purposes, and is entitled to all damages recovered by suits against parties infringing said patents by the use of hard rubber in dentistry; that the owners of said patents have been diligent in prosecuting their rights thereunder, have brought several suits against parties infringing the patents, and have obtained final decrees sustaining the validity thereof, and that they have granted a large number of licenses to dentists for the use of said invention. It further appears by the allegations of the bills, and by the affidavits filed by complainants, that the defendants are infringing these patents by the use of hard rubber for dental purposes, and the affidavits of the defendants themselves state that they are using hard rubber, which they suppose to be the same as covered by the patents in question.

The law is designed for the encouragement and protection of inventors, to secure to them the exclusive right in their inventions for a limited term, and to furnish to them adequate remedies for the invasion of their rights. An inventor may bring an action at law against parties infringing his patent, and the court has power to treble the damages awarded by the jury, or, if he prefer to do so, he may in the first instance seek redress in equity, without having established his right at law, and

the court is authorized to inhibit and restrain the further infringement of the patent, by writ of injunction, and to grant a decree for the payment of such damages as the patentee may be found to have sustained. In the present instance the complainants have elected to pursue their remedy in equity, and have prayed for an injunction and account. The invention which forms the subject-matter of these patents is one of very great public utility, which has conferred incalculable benefits on the arts and sciences, and entered very extensively into the business operations of a very large portion of the community; it therefore commends itself very strongly to the consideration and protection of courts of law and equity. The complainants, having expended large sums of money in the introduction of this invention into public use, and in necessary litigation to maintain their rights against those who seek to avail themselves of this valuable discovery without paying for its use, have a right to look to the courts for redress, and it is my duty, in administering the law, to see that that protection and redress, which I am placed here to afford and administer, are not withheld. I regard it as my plain and imperative duty to grant, in these cases, the relief which the law affords to the owners of patents for meritorious inventions, when their rights appear to have been disregarded and infringed. It is therefore ordered and decreed that a preliminary injunction be granted against the defendant, M. F. Hullihen, and against Charles Wingerter, and against Thomas Lunsford, in these cases, as prayed for in the bills of complaint, such injunctions to continue until the further order of the court.

[For other cases involving these patents, see note to Goodyear v. Mullee, Case No. 5,577.]